Good morning and may it please the Court. I'm Bill Patry, pro bono counsel for plaintiff Jeff Sedlik of nearby Altadena. I'd like to reserve five minutes for a rebuttal if I may. Jeff is an individual photographer. He relies on the licensing of his creative works to support his family. Defendant Von D is a wealthy celebrity who blew off Jeff's requests for license and then bragged about it to her almost 10 million Instagram followers. This case does not pit photographers against tattoo artists. The only amicus brief submitted to you by tattoo artists was in support of Jeff. On page nine of their brief they write, quote, if this tattoo is not copyright infringement then no tattoo is. But it is infringement, plainly and unmistakably as I shall now explain. The old cliche that a picture is worth 10,000 words applies in this case. In our blue brief on page 11 there's an Instagram post that shows Defendant Von D copying Jeff's photograph which is taped right behind her on the wall. Mr. Patry, that of course goes to the copying aspect but we're looking at the illegal appropriation element where we at least nowadays are doing two analyses, the extrinsic and intrinsic analyses. I guess I'd like to focus you on the intrinsic analysis to try to understand what you believe would be the correct order of operations before the district court. So say for example we go through the filtering and do everything on the extrinsic and let's say perhaps even the district court might have erred on that ground. With the intrinsic, picture worth a thousand words, holistic, we're looking to the concept and feel. How are we able to review at all a jury determination on the intrinsic test? Isn't it essentially beyond our review? Yes. So if you go to, I guess there's two parts. One of which is if the copying is literal as it was here. So on that exhibit you see on the right hand side a statement that it was 100% exactly the same as the reference. Portraits are traced directly from the actual photo. Right, but it goes to the jury and they say, let's assume that even if the extrinsic, which can be a question of law that we can reach, goes to the jury and we have to assume that they decided that it was intrinsically not substantially similar. What are we supposed to do with that? Do you have a case that would allow us to revisit the jury's verdict on that element? Yes. So we move for summary judgment and the question is there was summary judgment which is denied. It goes to a jury and then your question I believe is, well it went to a jury and the jury could have done what it did. Maybe 99.9% of the people would have done something different but they did that. So how do you get to review that given that stature? I believe that's your question. That is. All right, so the answer is this. If you go to one excerpt of Record 122, you'll see this is the summary judgment decision and the trial court there says that she focuses on the differences between the two. Yes? She emphasized, and the test of course is substantial similarity not substantial differences. Right, and that may well be error but we're dealing with a different record after trial which doesn't allow us to just go back and redo the summary judgment decision, right? You can see that there are additional different facts before the jury for purposes of our review. I'm not sure they're different facts because they're the same two works. The works didn't change from summary judgment to the trial. They're right there. Let's assume that I'd rather not revisit the summary judgment question because we have a pretty high standard there given that the jury has other facts. So how do we get at the jury's verdict if we're looking at the jury even if the district court erred with regard to the denial of summary judgment? Yes, so it's a question of law I believe for this reason. What the district court said was that she let it go to a jury because there could be more than de minimis differences, right? That's why it went to the jury and so presumably the, you know, the jury focused on more than de minimis differences and in Bell versus Wilmot of course there's a great deal said about de minimis in that case and the error was that the jury was looking at more than de minimis differences as the way they reached the verdict that they did. That's never been the test. That was a made-up test. There's never been, as far as I know, any test in any circuit or district court where the jury in reaching the determination that you're asking me about said, well, we're going to say there's more than de minimis differences. But wasn't that the plaintiff's indication in fact? Didn't they indicate that it was a jury question? Well, we moved for summary judgment and the other side moved for summary judgment as well. So, you know, both sides took the position that it was a question of law. And, you know, you do have those two side-by-sides and, you know, it's very common for courts of appeals when you have two visual works side-by-side to look at that and say, plus you had the defendant's own admission that was 100% exactly the same. But where have we said that the intrinsic test could be satisfied as a question of law? Well, if the intrinsic test is you look at the question of whether there are more than de minimis differences, that's not the intrinsic test. The intrinsic test is the total concept and feel. Was there a jury instruction that you claim was error? No, not in substantial similarity. On fair use, absolutely. There were fatal and egregious jury instructions on fair use, but not for fair use and not for substantial similarity for the jury instructions. No. So my question is, so doesn't the Rule 50B motion fail because you didn't file a Rule 50A motion? That's with respect to fair use, but not with respect to substantial similarity. You filed a 50A motion? 50A, 50B, 59. And the question, of course, that we're presenting here and that Judge you get to decide this after a summary judgment and there's a jury. And the answer is, of course, that in the... And properly instructed jury now. Properly instructed jury, much less. Yes, absolutely, that's true. You had the Bard case, which talked about Ortiz, and said if there was an error of law, nevertheless, that is reviewable and reviewable de novo. And the error of law was allowing the jury to reach the intrinsic test based upon the wrong standard, which was more than de minimis. Don't they have to reach the... I mean, this is a question I'm going to have as I look at these cases for your friend as well. It strikes me that originally, going back to Crofts, the intrinsic test was conceived as a plaintiff protective test to ensure that a judge and expert witnesses couldn't slice and dice expression to avoid a clear infringement. And so they said, well, even if you've got the Mary McCheese over here and you've got our Puffin stuff over here, and a jury gets to decide whether they're close enough, and the jury did. But in this... But we've turned that to... It's a two-edged sword. And we've said that the intrinsic test also has to be met. And so the jury, defined for your client, would have had to have found the same look and concept under the intrinsic test as well. Do you agree with that? Yes. I mean, in the end, it's really rather simple. You have access, you have copying, which is here, and then you get to the end question, which is, are those two works substantially similar? Whether you call it extrinsic, intrinsic... But we have. The fact is we have, and you said we have to meet both. Yes, but it still has to be a reasonable jury. It can't be any jury, right? So there is that qualification that a jury, even using the intrinsic test, has to be a reasonable jury, and this one could not have been a reasonable jury. But I guess going then to the... Assuming we... Assuming I agree with you on that piece, what do we do with the fact that the jury then went on to find fair use as to the other uses, and that that wasn't properly challenged below? No, I think on fair use, there are two fatal errors in that. The one is the refusal to inform the jury that the court had already found as a matter of law two and a half of the factors. Yes? And under this court's rulings, United States versus Phillips, that became law of the case. So she could never... I've been doing fair use cases for 40 years, maybe even more than 40 years. I have never seen a trial court in a fair use case do what this one did, which was to decide partial summary judgment on some of the factors, and then not tell the jury that she had decided those factors, and let them go ahead and balance it and come out with a result. So you're saying we wouldn't have to remand, even if we agreed with you on the substantial similarity piece for the jury to revisit its verdict, even as to uses that were not substantially similar, but that it found fair use? You would still need a different jury. You couldn't obviously go back to that jury, but you could remand for another jury. The second part of it is that after Google v. Oracle, the Supreme Court said that the ultimate question on fair use is a legal question, and it's one for the judge to decide. This was a general verdict of yes or no for fair use. I don't know where the fact is that you would ever defer to with yes or no. Is yes or no a fact, or is it a question of law? The Supreme Court in Oracle v. Google, which was a general verdict case, said that the ultimate question of fair use is a legal question reviewed de novo, and you have the absolute ability to review that de novo, plus you have the jury instructions, which were fatally flawed by refusing to instruct the jury about those issues. We objected to those vehemently, and we said, look, if you do that, we're going to end right back up here after we come to the Court of Appeals and they reverse you. And she shrugged her shoulders and said, well, sometimes that happens. So that's why we're here. But Google did say you could get an advisory decision from the jury on fair use, and I'm wondering how that could have been accomplished in this case, given the yes or no, instead of factor by factor. So my time is almost up. I'd be happy to answer it, so I still have rebuttal. You can answer, and I'll get you some answers. Okay. The solution is really simple, and Judge Alsop has done this before, and in the two AI cases that he and Judge Cabrera had, that's what they're going to do. It's this. So the only way she ever could have saved this jury from being fatally flawed was to do this, was to have a special verdict. And she would say, I've already decided there's two and a half of these factors. I believe that commerciality, I believe that the fourth factor are disputed issues of fact. You go decide those, and then you give me the answer. And then she would then decide those and balance them, as Google instructed courts to do. They said, it's the ultimate question for the court to balance these. So she could have saved that jury had it been a special verdict. That's what Judge Alsop did in the cripple case, and that's what they're doing in those two AI cases. That's the only way it could possibly have been saved. So at a minimum, you have to vacate the jury instructions because they were fatally flawed and because Google said, it's the ultimate question for the court. So I'd like to reserve whatever time I have left. Thank you so much. Good morning. My name is Alan Grotsky, and I represent the Appellee, Kat Von D, and High Voltage Tattoo. This is not a case about the tattoo industry. It's not a case about the photography industry. It's not a case about tattoos in general. It's a case about a single post that show her process from beginning to end of making that tattoo, and a sketch that was used, the only purpose of which was used to size and place that tattoo. The jury was able to examine the photograph. They actually saw the arm on which the tattoo was inked. They saw the social media posts. They were properly instructed on substantial similarity, and based on the evidence and testimony, they made the factual determinations to reach a verdict in my client's favor. What the appellant is asking you to do is to throw out dozens of years of controlling Ninth Circuit law on the standard for reviewing jury verdicts on substantial similarity, on the test for substantial similarity in cases involving photographs, and on the consequences of failing to bring a Rule 50A motion. The jury here was properly instructed, and the judgment should be affirmed. Everybody agrees what the appropriate test here is. It's discussed is that in looking at substantial similarity, you have to look at each challenged work separately. There were six challenged works on substantial similarity, and every one had to be examined separately and has to be examined separately on appeal. In terms of the standard of... Could you address the question that Judge Johnstone asked your friend on the other side on this issue of the jury, right? So the question went to the jury, and so how are we then to review that decision? They've made a conclusion. Right. The jury made a decision on the intrinsic test and on the extrinsic test, and the intrinsic test is what we're talking about. And the Ninth Circuit for some time has said that that is an ordinary person's subjective impression of the similarities without any expert existence at its substantial similarity in total concept and feel. The Williams Court said it is a subjective test, and the Corbello case said it is a question of fact. The Ninth Circuit has said over and over again that you should not second-guess the jury's application of the intrinsic test. And, in fact, it's hard to imagine how you could. The question is, what's your subjective belief about total concept and feel based on looking at these works? That's what you got. I guess I take their argument to be that it was an error for the judge to have even done that, right? That that was the error, and that's the legal issue. Right. Well, so in other words, it was an error not to grant summary judgment. Well, that's not appealable. The problem is, this is not an appealable decision based on Dupre and the other NRTs. First of all, the record is not the same in the summary judgment motion as it is at trial. Among other things, in the summary judgment motion, the judge didn't see the actual they did at trial because Mr. Farmer was there and showed his arm. Second of all, critical element in determining substantial similarity is that the obligation of the person claiming infringement to identify what are the similarities. There was a declaration or an interrogatory response on summary judgment where Mr. Sedlik identified what those things were, and there was a list of 50 or 60, whatever there were. That was not introduced at trial. Mr. Sedlik had different testimony at trial about what the similarities were. So the record is not the same. And in any event, Dupre and Ortiz, what they say is, you can review a summary judgment that was decided on an issue of law. In other words, if a court denies summary judgment saying, as a matter of law, I disagree with you. But when a court finds, as the court did here, that there were material disputes of fact, it's not reviewable when there is a trial and a new virtually identical. We have one of the uses that's at issue is the artist directly copying or indirectly copying the photo. The photo is right there. I mean, we have lots of these other cases where we get to the intrinsic test because once we've filtered everything through the extrinsic test, there could be some gaps there. And again, I take Crofts as being plaintiff protective in terms of saying, we just don't want you to slice and dice the expression in so many places so that suddenly you have something that can't still capture the look and feel of the original piece. But in this case, this is a photo that was asked to and was successively tattooed on someone's arm. It is the same photo. And it seems like what we're doing now is using the extrinsic test to kind of slice and dice that to get away from the fact that this is the same photo. Why doesn't, for example, Unicolors control here? All right. Well, so let's talk about Unicolors and the specific facts. Again, I want to point out, we have to look at this as to every single challenged work. Let's keep it on the tattoo itself to keep it simple. Let's keep it on the tattoo. All right. Unicolors case. So first of all, to be clear, before I mention Unicolors, there is no case so far where the Ninth Circuit has ever reversed a jury's determination on the intrinsic test based on disagreeing with the jury's subjective opinion. There are cases where the court has said, we're reversing because there isn't sufficient, you didn't put the right evidence in. That's the Antonic case where they didn't actually put the challenged work. There's the Olson case that they cite where the court says, the jury was reasonable in making their decision, but we're reversing on the extrinsic test. And if we reverse... No, I take your point that we don't have anything quite in this posture, really, either way. Right. So we have Unicolors. And Unicolors, of course, is a summary judgment case. And it says, and the way Unicolors has been applied, and I'd ask you, I understand this is only a trial court case. It's the Dr. Seuss versus Kamekmid case. But that court went through an analysis of all the cases that relied on Unicolors, which they described as being exceedingly limited, and all pretty much dealing with fabric and apparel that were identical. And that's really what I think Unicolors is about. It certainly makes sense. It would, let me put it this way, say it a different way. It would make no sense. If Mr. Sedlik's photograph was uploaded onto somebody's website for an advertising, the exact photograph, it would be absurd to say, we have to have the jury decide if this exact photograph and this exact photograph are the same. But I think we've also said that just transferring it onto a different medium can't alone be a difference, right? We're looking at similarities rather than differences. So if you have, everything else is the same, and we're just going to change it from being on photo paper to someone's skin. How's that? I agree. I have never said that just transferring onto another, transferring something onto a skin in and of itself means it's different. This is substantial similarity. You look at the tests. This is not something where somebody took the photo and transferred it onto her skin. I think what we're all struggling with here is that, you know, we look at it, we say, this is the same photograph. Yet through all these machinations, it ended up being the jury saying, oh, but it's not substantially similar. And I think it kind of defies rationality to suggest that it's not the same photograph. It is the same photograph. It's on a different medium. So how did the jury get where it got? Well, I don't want to disagree with you, but it's not the same. It would be one thing if somebody had taken that photograph and put it on the skin, but she didn't do that. She drew it. She used it as a reference. There's no question. We admitted that she did. Traced it. No, no, no, no, no. That's not correct. So this is what happened. Let me talk about what happened with this photograph. She needs to place and locate the photograph on the arm and have the jury trace it. She traced it and she created that sketch. And she turns, she uses a thermofax machine to make a temporary purple line of the sketch, which she puts on the arm to say, do you like the placement of this? That stuff all disappears. That stuff all washes off once the person determines this is where I want it. And then she looks at the sketch and she draws it. And she draws, she makes her own decisions. She made decisions about the hair. She made decisions about the shading. She made decisions about the clothing, which wasn't the same. She made a number of different decisions. Isn't this like the Warhol case? I don't know if it's like the Warhol case because I don't know what, Warhol case was the exact photograph that was painted over, first of all. But second of all, the Warhol case, I don't know that it ever went to a jury. And I don't know how you compare a different photograph. Warhol was not a case where somebody said, I'm going to draw this photo. Nobody, that did not happen in Warhol. It's a different case. So I don't, I don't see how you can look at things that happened in other cases where different people looked. I mean, every, every substantial similarity case. Counsel, that's our job. Well, no, no, I understand that. You certainly, well, no, it's certainly your job to look at the other cases. And I'm, I'm, I understand that. But the fact that one jury or one judge found two things substantially similar in one case, I don't know how that applies in this case, especially when the Second Circuit doesn't have a standard that says the intrinsic test is left to the jury and it's their subjective holistic opinion. Counsel, oh, go ahead. I guess this is, I wanted to walk you through, I guess, a hypothetical because I'm just trying to figure out whether the intrinsic test, which was an adaptation in some ways of the Second Circuit test, and as you've said, has taken a different direction. I guess my concern is that we're leaving it in a place where the question of copyright infringement becomes entirely unreviewable and uneven. And so for, for an example, so to take Miles Davis recorded, Someday My Prince Will Come from Snow Light. And it is the same melody. And, you know, if you look at a lot of our intrinsic cases, they're dealing with really tricky questions of a riff here and there in a particular song. A lot of them deal with music and music is, is a harder medium to grasp sometimes than photographs, at least maybe for judges. So he records it, he credits it, that it was from, but I could imagine that you have the identical melody. It meets the extrinsic test. You filter everything away. You've got the same notes in roughly the same order. But then they go and make the arguments that, as I understand, your client made to the jury here, is that, well, they had a different intention. There is a different feel of melancholy around it, etc. And so it goes to the jury and they say, well, we just feel differently about the Miles Davis tune than we did about the Walt Disney tune, even though it's the exact same tune for legal purposes. And everyone would understand that that was copyright and, and it was licensed because otherwise it would be infringed. I guess my concern is we're kind of washing out the value of, and the principle of copyright by allowing a jury to reach unreviewable subjective determinations on an intrinsic test that no one has been able to articulate here other than kind of the emotions that are evoked by looking at the, the photo. Well, I hear your concern. That's the test. And I, in your hypothetical. Well, and the test has been criticized, at least as it currently, again, Crofts was all about protecting the plaintiff, not allowing expert witnesses. And most of our, many of our cases for several decades were about, about ensuring that an expert witness and a judge couldn't come down at a motion to dismiss their summary judgment to deny the plaintiff their chance to show a jury that, no, this is the same thing, but this is really the reverse. And I worry that it's, it's, it's not quite what we originally got into the intrinsic test to do. And it creates unreviewable decisions of non-infringement. It's true. It does. You know, this test is very much akin to credibility tests, which is the kind of the Ninth Circuit kind of says the same thing about credibility determinations that when a jury makes a credibility determination, you kind of can't review it. Well, but the copyright is a, is a kind of a complicated legal concept, right? In terms of the idea, expression, dichotomy. And I get that on the copying side and there've been commentators who've noticed on the copying side, we might want to test the credibility of whether the tattoo artist really copied the photo, but that's undisputed in this case. So what we're really looking at is, was the protectable elements of the photo, are they present in the tattoo? We look at the similarities. And if that's the case, how can that be, does the intrinsic test kind of defeat that basic copyright principle? I don't think so. I mean, I think the intrinsic test is part of it, that to determine what is protectable, you got to look at it from two angles. You look at it from an objective angle, you look at it from a subjective angle. Even if objectively it's an illicit copy. To be clear, I think we win on the extrinsic test as well, but, but that is the test. And the test makes sense that we're looking at this, we've decided we're going to look at it from two angles. We're going to look at it from an extrinsic angle and we're going to look at it from an intrinsic angle. We're going to look at it objectively, break it apart, look at separately, but we need a jury to get together and say, yeah, I feel this thing is similar. And if they don't, because they saw the tattoo and they see the differences and they think it's different, then that's something that I think you have to respect. Before my time runs out, can I briefly discuss the fair use issue? Yes. So I just want to talk about, there are two issues with respect to jury on fair use. One is whether there should have been a jury and the other was certain instructions. And whether there was, should be a jury, I want to be clear, there is at no point in the record, no point, where Mr. Sedlick's counsel told the court, you can't try this case with a jury. It never happened. They submitted jury instructions. They submitted verdict forms. They never took the position that it should be tried to a court. Google, in the Google case, the trial court presented the jury with a question, is this fair use? They answered yes or no. And the Supreme Court said that was the right decision. That was how you do it. In Divine Dharma, exactly the same. Exactly like our case. Frankly, we took our jury instructions and our verdict form from Google. Divine Dharma, same thing. Same in the Griner case. There is no case where anybody has ever said the jury can't answer the ultimate question. It's just that the court on a Rule 50A motion gets to review the elements. In terms of the instructions, there was only one social media post that the jury made a fair use decision on. It was what we call the process post, where Kat Von D was in the process of making a tattoo, and it was the post that had the copy of Sedlick's photo hanging in the wall, which is why we did not say that it wasn't substantially similar. We stipulated that it was substantially similar. So, factor two weighed in favor of Mr. Sedlick. The jury instructions said factor two tends to weigh in favor of Mr. Sedlick. And when I argued closing argument, I said to the jury, factor two weighs in favor of Mr. Sedlick. Then there's factor three. That's the amount of the photo. Now, to be clear, in the summary judgment motion, the court only looked at the tattoo and made no findings about the social media posts. Nevertheless, since that post at issue had the entire photo, I said to the jury, factor three weighs against a finding of fair use. Factor two and three weigh against. Factor one and four, I argued, weigh in favor. So there is no error. The error on the jury instructions is harmless, because the only finding they made on fair use, in our favor, was on a post that I argued, I told the jury, factors two and three weigh against us. Roberts. I'm sorry. What's on the fair use? What's your take, then, if for whatever reason we reverse with respect to substantial similarity, what then, given the jury's unchallenged findings on fair use? Well, the jury, I mean, the jury only made a finding the jury made finding a fair use on two social media posts. They made a finding on the process post. They made a finding on one of the other posts, which they weren't supposed to get to. Yeah. The jury hasn't made a decision on fair use as to those other uses, and they've waived the right to argue, they failed to file a Rule 50A motion, so you can't look at that. I think it has to be remanded for a new trial on fair use. Is this my, am I past my time? Yes. Okay. You're two minutes over. Thank you. Briefly, on Google v. Oracle, I worked in that case for 10 years as in-house counsel for Google, and they reviewed it as de novo. There were no facts. It was simply a yes or no, and they said it was a legal question, so you can review that, too. Judge Johnson, I think, went to the exact heart of the matter, and that's the exception. Admittedly, this is an exceptional case on the summary judgment in substantial similarity. What my friend on the other side is basically asking for is jury nullification. Yes, for this reason. You have those two works. The defendant admitted 100% copying and tracing, too, by the way. It's not true that it's not traced. The exhibit that's on our page 11 says that it was traced directly from the original, but Unicolors is on point here. It said that when works are overwhelmingly identical, the district court should have concluded that no reasonable jury could find that the works were not substantially similar. We will know what the jury did. We don't know what the mystery of Stonehenge is, either, but we do know the jury should never have done this. When you have two works that are virtually identical, where they admit they're virtually identical, and where she admitted that she copied all the protectable elements of it, and there are any intrinsic tests, that should never have gone to a jury. Otherwise, as Judge Johnstone is indicating, you have a situation where jurors can do whatever they want, and it's not reviewable. But that is your job, to review these. It is not any jury. It has to be a reasonable jury. And why this jury was so unreasonable is a mystery we'll never know, but it can't stand. They also didn't decide fair use, by the way, because they had no substantial similarity, so you would have to remand for fair use on that as well. Thank you so much. Thank you, counsel. Stedlick, Catherine von Drachenberg, is submitted.
judges: WARDLAW, MENDOZA, JOHNSTONE